Filing # 51886854 E-Filed 01/31/2017 04:55:57 PM

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

| | |
|---|---|
| JOHN SANDERS, | CIVIL NO.: |
| Plaintiff | COMPLAINT AND DEMAND FOR JURY TRIAL, EXHIBITS __; SUMMONS IN A CIVIL CASE |
| vs. | |
| LOCKHEED MARTIN Corporation, | |
| Defendant. | |

### COMPLAINT AND DEMAND FOR JURY DEMAND

Plaintiff, JOHN SANDERS, by and through his undersigned counsel, hereby complains against LOCKHEED MARTIN [hereinafter Lockheed].

### STATEMENT OF THE CLAIM

1. This is an action seeking damages in excess of $15,000 and to vindicate violations of the Plaintiff's rights and redress the unlawful conduct of the Defendant. This action arises out of the illegal treatment that the Defendant subjected the Plaintiff to. Sanders alleges *inter alia*, that he has been subjected to a hostile work environment and retaliation. These acts were done in violation of Chapter 760 of the Florida Statutes.

### PARTIES

2. Plaintiff, John Sanders, was at all material times, a resident of the United States, of the State of Florida, and of Orange County, Florida.

3. Defendant, Lockheed is an entity that regularly conducts business in Orange County, Florida.

1

## JURISDICTION AND VENUE

4. This is an action for money damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs, interests and attorneys' fees, brought pursuant to Chapter 760 of the Florida Statutes.

5. This action is authorized and instituted pursuant to Chapter 760 of the Florida Statutes. The Jurisdiction of the court is predicated upon Article V of the Florida Constitution.

6. Venue is proper in Orange County, Florida pursuant to Chapter 47.011 of the Florida Statutes. Defendant Lockheed conducts it business in Orange County, Florida. Also the causes of action arose in Orange County, Florida.

7. All conditions precedent to the bringing of this action have occurred or have been performed. The Plaintiff timely dual-filed a complaint with the EEOC and FCHR on August 7, 2015. The EEOC did not complete its investigation within the required 180 days. Rather, it issued an "Unable to Determine" letter on June 3, 2016. The FCHR also failed to render a decision within the required 180 days. Accordingly, Plaintiff proceeds under F.S.A. §760.11(4).

## FACTUAL ALLEGATIONS

8. John Sanders is an African American male who has worked in the field of aviation since 2013. Sanders holds a Bachelor Degree from the University of Buffalo, and has experience in the field of engineering.

9. Sanders began his employment with the Defendant on or about December 3, 2014 working as a Purchasing Assistant. He was hired, and worked in the Engineering

Materials Acquisition Center (EMAC) with other employees. His responsibilities included ordering and receiving different parts for engineers, as well as managing stock rooms. Sanders and his co-worker Ed Henry were the only African Americans working in a department of approximately 10 employees.

10. At the onset of his employment Sanders was subjected to unwelcomed comments and behavior by his colleagues Michael "Mike" Baker and Paul Slocum. Both Baker and Slocum are employees of the Defendant. On or about December 3, 2014, Sanders' first day, Baker approached him and asked inappropriate personal questions. Specifically, after Sanders told Baker that his girlfriend attend Baker's alma mater University of Central Florida, Baker asked Sanders, "What color is your girlfriend?" The racial undertones of the question made Sanders very uncomfortable.

11. In Sanders' particular office there were a total of three employees, the Plaintiff and the other two were Baker and Slocum. Baker and Slocum did the training for new employees. Sanders reached out to Slocum on or about December 17, 2014 requesting training. Slocum agreed to provide the training that day, however, he failed to do so. Sanders asked Slocum several times for assistance. Slocum never provided the requested assistance.

12. On or about January 13, 2015, Baker approached Sanders aggressively and asked him why he was "so standoffish." When Sanders responded to Baker, Baker replied, "Well, you don't ask questions…" Sanders then commented to Baker that he has indeed request guidance. He also asked Baker why he was interrogating him. Baker did not provide a response.

3

13. The following week, on or about January 21, 2015 Sanders met with his supervisor Donna Traxler to express his concerns regarding Baker's actions. He stated that Baker's comments made him fear for his job. Traxler stated she would sit Baker and Sanders down to discuss the issue, but that never occurred. Instead, after Sanders discussed his concerns with Traxler about Baker, Traxler assigned Baker to supervise Sanders in the EMAC, on or about January 23, 2015.

14. On or about January 22, 2015, Ed Henry and Sanders had a brief discussion about a news story concerning a bear that was killed in Central Florida. Henry called Baker over and asked him why they would kill the bear. Baker responded, "Because it's black." Sanders perceived this to be a racial joke. Neither Sanders nor Henry found it to be a humorous. Sanders found the comment rude and unwelcomed.

15. Additionally, Nga Tran, one of Sanders colleagues, approached him to inform him that she observed Baker and Slocum looking around his desk and snooping in the area he places his personal items. She warned him to be careful. The next day Sanders noticed that someone had moved his personal items while he was out of his office.

16. Baker continued to harass Sanders. He did not properly train Sanders and became confrontational on February 4, 2015. When Sanders returned from watching a Missile and Fire Control Presentation, Baker became hostile. He accused Sanders of being defensive and having an attitude problem. Baker was also hostile to Henry when he entered the room to give Sanders a cellphone holder. The two men's voices were elevated and Tran had to calm everyone. Baker wanted to meet with Sanders alone after the incident, however, Sanders was reluctant to meet with him without others present.

4

17. Baker regularly interfered with Sanders ability to successfully perform his job duties. For instance, on February 6, 2015, Tran asked Sanders to place several boxes on her desk. As Sanders attempted to complete this task Baker interfered by insisting that he move the boxes elsewhere, which was contrary to Tran's directive. Sanders explained to Baker that Tran asked the boxes to be moved to the desk. Baker did not relent, even at one point saying to Baker "do you hear me talking to you?"

18. After the incident Sanders again reached out to Traxler, as well as Steve Rocca, another manager, about Baker's behavior. This began an internal investigation with the main office in Texas. Sharon Nelson, who worked in Human Resources, was responsible for the investigation.

19. While the internal investigation was ongoing, Baker continued to engage in aggressive and unprofessional behavior towards Sanders. This included standing over Sanders, slamming items on his desk and speaking harshly. Baker never treated non-African American employees in the same manner. These actions were done because of Sanders race.

20. On April 7, 2015 Baker's behavior again took an overtly racial tone. Baker and Slocum entered the EMAC after lunch where Sanders was sitting at his desk working. As they entered, Sanders overhead them saying the word "shenanigans" back and forth to each other placing much emphasis on the last party of the word "nigans." They laughed each time they said the word. When Baker passed Sanders' desk he turned and looked at Sanders and slowly said the word "shenanigans" again placing great emphasis on the last syllabus so that it sounded like "Niggans." The Plaintiff

believed that Baker was indirectly calling Sanders a nigger, which Sanders found very offensive, particularly in light of Baker's other behavior.

21. Sanders reported Baker's comments to HR Representative Sharon Nelson. She replied that this was a childish issue and sent the matter back to a HR representative in Orlando. The matter was subsequently given to Keri Kelsey to investigate. Rocca told Sanders that the investigation took longer than normal and that he did not like the way they were handling his case.

22. Kelsey completed the investigation some time in May, but did not interview the witnesses provided by Sanders. She met with Sanders to discuss the conclusion of her report and told him that Baker and Slocum denied the allegations such as the "black bear" comment. She then admonished that he "need[ed] to focus more on [his] work and not writing down things that didn't happen." Also, she told him he should have more energy on trying to get in with the company; that he was taking things too personally and needed to understand people have different personalities.

23. Shortly after his meeting with Kelsey, Sanders was called into a meeting with Traxler and Rocca. They informed him that he was being terminated due to budgetary reasons. They assured him that his termination was not connected to him filing a complaint about being harassed or the resulting investigation.

24. Shortly after Sanders was terminated, he reached out to Roger Newman of the Superior Group. The Superior Group is a staffing agency that finds contractors for companies such as the Defendant. Newman saw an opening for the Defendant, which was the exact same job Sanders was terminated from due to budgetary reasons.

6

   When Newman reached out to the Defendant on behalf of Sanders, Traxler informed him that Sanders was let go because he did not get along with others.

25. Joe Kummer, an electrical engineer for the Defendant, told Sanders a similar story. Kummer asked why Sanders was terminated and was told "He was let go due to personal issues."

26. Sanders has subsequently sought other employment options in different departments with the Defendant, and elsewhere. He was unsuccessful in procuring similar employment. Eventually he took a position working in assembly that was half the pay rate as before.

## COUNT I: HOSTILE WORK ENVIORNMENT

27. Plaintiff realleges and incorporates by reference as though fully contained herein, the allegations set forth in paragraphs 1 through 26, above.

28. The Plaintiff is a member of a statutorily protected class; he is an African American male. He has worked in the field of aviation since 2013. He holds a Bachelor Degree from the University of Buffalo, and has experience in the filed of engineering.

29. Plaintiff was subjected to unwelcomed harassment because of his race. The harassment included but is not limited to such things as Mike Baker, a white co-worker, asking him inappropriate personal questions such as what color was his girlfriend and repeatedly Also, Baker and Slocum searched Sanders desk and personal items on numerous occasions. Baker was repeatedly aggressive, rude and confrontational towards Sanders. He used the word "shenanigans" to use the racial slur "niggians" toward Sanders. When Sanders complained about being harassed Keri Kelsey was suppose to investigate the matter. However, she did not interview

witnesses provided by Sanders. Instead, she chided Sanders about making complaints, and essentially accused him of making false allegations. Baker and Slocum did not treat non-African American fellow employees in the same manner.

30. The harassment is sufficiently severe and pervasive and has altered the terms and conditions of his employment. Ultimately, the Plaintiff was terminated. Traxler and Rocca told the Plaintiff he was terminated ostensibly because of budgetary reasons. However, the Defendant, specifically Traxler, has told more than one individual that the Plaintiff was terminated because he did not get along well with others.

31. The Plaintiff complained to Traxler, Rocca and HR about his concerns regarding Baker and Slocum's actions. The Defendant failed to take prompt and remedial action. Rather, Kelsey did an inadequate investigation and scolded Sanders for making a complaint. Rather, Sanders was terminated shortly after the conclusion of the investigation because "he didn't get along well with others." Accordingly there is a lawful basis to hold the Defendant liable for the racially hostile environment the Plaintiff was subjected to.

32. WHEREFORE, JOHN SANDERS, the Plaintiff, demand judgment against Defendant LOCKHEED MARTIN, in this cause of action for compensatory and punitive damages in a sum to be determined at the trial of this matter, costs, attorneys' fees and for such other relief as the Court may deem just and proper.

## COUNT II: UNLAWFUL RETALIATION

33. Plaintiff realleges and incorporates by reference as though fully contained herein, the allegations set forth in paragraphs 1 through 26, above.

8

34. The Plaintiff is a member of a statutorily protected class; he is an African American male.

35. He engaged in a protected activity when he complained to Donna Traxler and Steve Rocca about the ongoing racially inappropriate conduct of Baker. He further complained to Sharon Nelson in HR about Baker's conduct.

36. The Plaintiff suffered adverse employment actions because of his protected activity. To wit, he was terminated from his position with the Defendant and denied other lucrative positions that he was qualified to perform after the Defendant terminated him. The Defendant expressed to him that he was terminated due to budgetary cuts and not because he filed a complaint. The Defendant also stated this to the EEOC. However, shortly after the Plaintiff was terminated, a job opening was posted in his department for the same position. When Roger Newman of the Superior Group, a recruiting agency, reached out to Donna Traxler on behalf of the Plaintiff to discuss possible employment options, she gave a different explanation why the Plaintiff was terminated. She informed Newman that the Plaintiff was terminated because he did not get along with others. Therefore, the Plaintiff was not considered for other positions with the company.

37. There is a causal nexus between the Plaintiff's protected activity and adverse employment actions. To begin, during his meeting with investigator Keri Kelsey, she expressed hostility toward his complaint when she admonished him to "focus more on [his] work and not writing down things that didn't happen." She also told him he was taking matters too personally, and needed to understand different personalities. Kelsey then concluded her investigation without interviewing witnesses provided by

9

the Plaintiff. Within a month of the investigation's conclusion, the Plaintiff was terminated ostensibly due to budge cuts. However, Donna Traxler told Roger Newman that the Plaintiff was terminated because he did not get along well with others. Traxler did not work directly with the Plaintiff. Rather, the essential information she had regarding him was the result of his complaint of discrimination.

38. WHEREFORE, JOHN SANDERS, the Plaintiff, demand judgment against Defendant LOCKHEED MARTIN, in this cause of action for compensatory and punitive damages in a sum to be determined at the trial of this matter, costs, attorneys' fees and for such other relief as the Court may deem just and proper.

## DAMAGES

WHEREFORE, the Plaintiff, John Sanders, demand judgment and damages against Defendant Lockheed Martin as follows:

An award of compensatory damages in an amount to be shown at trial for past and future economic lost, extreme emotional distress, impairment of quality of life, and all other relief that is provided for by law and which the court deems appropriate.

Respectfully submitted this 31st day of January, 2017.

*/s/ Jerry Girley*
Jerry Girley, Esquire
The Girley Law Firm, PA
Florida Bar No. 0035771
125 E. Marks Street
Orlando, Florida 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com